**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HAN VU, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BOSE CORPORATION,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Han Vu ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, brings this class action complaint against Defendant Bose Corporation (the "Defendant" or "Bose"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## INTRODUCTION

1. This is a class action lawsuit against Defendant regarding the manufacture, distribution, and sale of its Bose S1 Pro System Battery Packs and Bose S1 Pro+ System Battery Packs, whether sold with Bose S1 Pro and S1 Pro+ Portable Bluetooth Speaker Systems or separately as accessories or replacement parts (the "Affected Products"). The Affected Products are the subject of a recall announced by Defendant and the U.S. Consumer Product Safety Commission ("CPSC") on November 5, 2026, due to a defect in the lithium-ion battery packs that can cause them to overheat and ignite, posing a risk of injury from fire and overheating hazards to consumers.

2. Defendant sold the Affected Products through its website (https://www.bose.com/), its retail stores, and third-party retailers, including Best Buy, Amazon, Walmart, and other retail stores, distributors, and e-commerce platforms, from approximately December 2017 through July

2026. The battery packs sold for between $100 and $160 individually, and the speaker systems were sold with the battery packs for approximately $700.[1]

3. Consumers, including Plaintiff, had a reasonable expectation that the Affected Products would not overheat, ignite, catch fire, or otherwise pose a danger to their person or property.

4. Defendant described the S1 Pro+ System Battery Pack as a "lithium-ion battery [that] provides up to 11 hours per charge and installs easily into the dedicated compartment on your S1 Pro+ for secure and reliable use."[2] Defendant also told S1 Pro buyers that "with the optional rechargeable lithium-ion battery, you can use your portable S1 Pro speaker anywhere too."[3] A battery pack sold for "secure and reliable use" conveys to a reasonable consumer that it will not overheat and catch fire during ordinary use.

---

[1] *Bose Recalls Lithium-Ion Battery Packs for S1 Pro and S1 Pro+ Bluetooth Speaker Systems Due to Risk of Injury from Fire and Overheating Hazards*, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION (Nov. 5, 2026), https://www.cpsc.gov/Recalls/2027/Bose-Recalls-Lithium-Ion-Battery-Packs-for-S1-Pro-and-S1-Pro-Bluetooth-Speaker-Systems-Due-to-Risk-of-Injury-from-Fire-and-Overheating-Hazards-0 (last visited Nov. 13, 2026) [hereinafter *Bose Battery Recall*].

[2] *Bose S1 Pro+ System Battery Pack*, BOSE (archived May 18, 2026), https://web.archive.org/web/20260518160330/https://www.bose.com/p/accessories/bose-s1-pro-system-battery-pack/CMPR-FS1PROP-BATTERY.html; *see also* https://www.bose.com/p/accessories/bose-s1-pro-system-battery-pack/CMPR-FS1PROP-BATTERY.html (last visited Nov. 13, 2026) [hereinafter *Bose S1 Pro+ Battery Pack*].

[3] *S1 Pro Portable Bluetooth® Speaker System*, BOSE, https://www.bose.com/p/all-products/s1-pro-portable-bluetooth-speaker-system/S1PRO-SPEAKERWIRELESS.html (last visited Nov. 13, 2026) (describing the S1 Pro as a "rugged, all-in-one system" that is "[m]ade to travel" and stating that "with the optional rechargeable lithium-ion battery, you can use your portable S1 Pro speaker anywhere too"); *see also Bose S1 Pro+ Portable Bluetooth Speaker System*, BOSE, https://www.bose.com/p/portable-pa/s1-pro-wireless-pa-system/S1PROP-SPEAKERWIRELESS.html (last visited Nov. 13, 2026) (describing the S1 Pro+ as "[v]ersatile, portable, powerful" and a "battery-powered PA system" with "up to 11 hours of play time").




*Figure 1 - Defendant's product page for the S1 Pro+ System Battery Pack (bose.com, archived May 18, 2026), https://web.archive.org/web/20260518160330/https://www.bose.com/p/accessories/bose-s1-pro-system-battery-pack/CMPR-FS1PROP-BATTERY.html*

5. On November 5, 2026, CPSC and Defendant announced the recall of approximately 634,759 Bose S1 Pro System Battery Packs and S1 Pro+ System Battery Packs sold in the United States, in addition to approximately 35,400 units sold in Canada. The recall warned that the lithium-ion battery packs can overheat and ignite, posing a risk of injury from during normal use.

6. Defendant announced the recall after receiving seven reports of the battery packs melting, producing smoke, or catching fire, including six reports of property damage.[4]

7. The recall instructs consumers to immediately remove the recalled battery packs from any S1 Pro and S1 Pro+ systems and stop using them. Consumers may continue to use the speakers only while connected to AC power, and must register the affected battery packs' serial numbers with Defendant to receive free replacement battery packs, but Defendant offers no refund.[5]

---

[4] *Bose Battery Recall*, *supra* note 1.
[5] *Id.*

8. The recall announced by Defendant applies to battery packs whose 17-digit serial numbers begin with one of the following seven six-digit prefixes: 083723, 078352, 084105, 078591, 078592, 084106, or 086409.[6]

9. Accordingly, Plaintiff brings this action individually and on behalf of the Nationwide Class and New York Subclass (collectively, the "Classes") defined below to recover damages, restitution, injunctive and equitable relief, attorneys' fees and costs where authorized by law, and all other relief available for: (i) breach of express warranty; (ii) breach of the implied warranty of merchantability; (iii) violation of New York General Business Law ("GBL") § 349; (iv) violation of GBL § 350; (v) unjust enrichment; (vi) negligent design; (vii) negligent failure to warn; and (viii) negligence.

10. Plaintiff and the Classes seek to recover the money they paid for a product that Defendant has admitted is unsafe and unfit for the ordinary purpose for which the Affected Products are used. They also seek restitution and injunctive relief directed at Defendant's inadequate recall remedy. Neither Plaintiff nor the Classes seek recovery in this action for personal injury, wrongful death, emotional distress, or damage to property other than the Affected Products themselves.

**<u>PARTIES</u>**

11. Plaintiff Han Vu is a resident and citizen of New York.

12. In or around 2024 or 2025, Plaintiff Vu purchased two Bose System Battery Packs from Best Buy.

13. Upon information and belief, both of his battery packs are subject to the recall.

14. On or about November 6, 2026, Defendant emailed Plaintiff Vu an "Important

[6] *Id.*

Product Recall Notice — Action Required." The notice stated, "Our records indicate that you may own a battery pack included in this recall," and told owners of included battery packs to "[i]mmediately stop using it."

15. After receiving Defendant's notice, Plaintiff Vu removed the battery packs and stopped using them. They remain in his possession and have not melted, smoked, or caught fire. Because the battery packs are subject to the recall and can overheat and ignite, Plaintiff Vu cannot safely use them for their intended purpose of powering a portable speaker system.

16. In purchasing the Affected Product, Plaintiff Vu sought a product fit for its intended and ordinary use as a safe, reliable rechargeable battery for a portable speaker system and would not have purchased it, or would have paid less for it, had Defendant disclosed the defect in the lithium-ion battery and the risk that the battery could overheat and catch fire.

17. As a result of Defendant's conduct, Plaintiff Vu suffered economic loss, including the difference between the amount he paid and the value of the Affected Product as received. His economic injury was complete at the moment of purchase, when he paid for a product that was not what Defendant represented it to be.

18. Defendant Bose Corporation is a consumer electronics and audio equipment company that designs, markets, and sells headphones, speakers, home audio products, and portable public address ("PA") systems, including the S1 Pro and S1 Pro+ Portable Bluetooth Speaker Systems and their battery packs. Upon information and belief, Bose Corporation is a Delaware corporation with its principal place of business in Framingham, Massachusetts, from which it directs and controls the marketing, distribution, and sale of its products throughout the United States.[7]

---

[7] *See About Us*, BOSE, https://www.bose.com/about (last visited Nov. 13, 2026); *see also* Compl. ¶ 2, *Bose Corp. v. Koss Corp.*, No. 1:20-cv-12193 (D. Mass. Dec. 10, 2020), ECF No. 1 (alleging that "Bose Corporation is a Delaware corporation with its principal place of business at 100 The Mountain Road, Framingham, Massachusetts 01701").

19. Defendant created and/or authorized the false and misleading advertising and labeling of the Affected Product. Defendant's conduct as alleged herein was part of its regular business operations involving the design, marketing, distribution, and sale of consumer audio products throughout the United States, including the Affected Product.

## JURISDICTION AND VENUE

20. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and Plaintiff, who is a Class Member, is a citizen of New York, and Defendant is a citizen of Delaware and Massachusetts.

21. This Court has personal jurisdiction over Defendant Bose because Bose is at home in Massachusetts. The CPSC identifies Bose as being located in Framingham, Massachusetts, and Bose conducts business from this State. Defendant is therefore subject to general personal jurisdiction in Massachusetts. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant resides here, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including, upon information and belief, Defendant's design, marketing, and recall decisions concerning the Affected Products, which were made at its Framingham headquarters. Framingham is in Middlesex County, and this action belongs in the Eastern Division under Local Rule 40.1.

## FACTUAL ALLEGATIONS

### A. Defendant Manufactured, Distributed, Marketed, and Sold the Affected Products

22. Defendant manufactured, distributed, marketed, and sold the Affected Products, which it marketed as reliable rechargeable batteries for its portable S1 Pro and S1 Pro+ speaker systems.

23. Defendant utilized third parties, including Best Buy, Amazon, Walmart, and other retail stores, distributors, and e-commerce websites, to help distribute, market, and sell the Affected Products.[8]

24. In the months before the recall, Defendant sold the S1 Pro+ System Battery Pack on bose.com for $159.00[9] and the S1 Pro System Battery Pack for $129.00.[10]


**Bose Recalls Lithium-Ion Battery Packs for S1 Pro and S1 Pro+ Bluetooth Speaker Systems Due to Risk of Injury from Fire and Overheating Hazards**

Share:

S1 Pro

S1 Pro+

**Name of Product:**
Bose S1 Pro System Battery Pack and S1 Pro+ System Battery Packs for use with Bose S1 Pro and Bose S1 Pro+ Speaker Systems.

**Hazard:**
The recalled lithium-ion battery packs can overheat and ignite, posing a risk of injury from fire and overheating hazards.

**Remedy:**
Replace

**Recall Date:**
November 05, 2026

Report an unsafe product

**Units:**
About 634,759 (In addition, about 35,400 were sold in Canada)

*Figure 2 - The CPSC recall notice depicting the recalled Bose S1 Pro and S1 Pro+ System Battery Packs*

## B. Defendant's Use of Unsafe Lithium-Ion Battery Cells in the Affected Products

25. Defendant designed the Affected Products to use lithium-ion battery cells.

26. The main hazard of a lithium-ion battery is "thermal runaway": when a defective or damaged cell heats faster than it can cool, the heat sets off a chain reaction that can end in fire or explosion.[11]

---

[8] *Bose Battery Recall*, *supra* note 1.
[9] *Bose S1 Pro+ Battery Pack*, *supra* note 2.
[10] *S1 Pro System Battery Pack*, BOSE (archived Apr. 16, 2026), https://web.archive.org/web/20260416042537/https://www.bose.com/p/accessories/s1-pro-system-battery-pack/CMPR-FS1PRO_LI_ION-BATTERY.html (last visited Nov. 13, 2026).
[11] *Lithium-Ion Battery Fires and Fire Protection*, NATIONAL FIRE SPRINKLER ASSOC., (Jan. 12, 2023) https://nfsa.org/lithium-ion-battery-fires/ (last visited Sept. 3, 2026).

27. The CPSC's recall notice for the Affected Products warns that recalled lithium-ion batteries "must be disposed of differently than other batteries because they present a greater risk of fire."[12]

28. Manufacturers of consumer electronics are well aware of the dangers of lithium-ion batteries. As far back as 2016, before Defendant began selling the Affected Products, Samsung recalled about 1.9 million Galaxy Note7 smartphones in the United States because their lithium-ion batteries could "overheat and catch fire."[13] Federal regulators treat lithium-ion batteries as hazardous materials, including the Federal Aviation Administration prohibition on spare lithium-ion batteries being stored in checked baggage,[14] and federal hazardous-materials regulations governing how lithium batteries are packaged and shipped.[15]

29. In 2024 alone, the New York City Fire Department reported 277 fires caused by lithium-ion batteries, which killed six people.[16] A company selling lithium-ion battery packs for use at parties and outdoor events therefore knew, or should have known, that thermal management, quality control, and adequate warnings were central to the safety of the Affected Products.

---

[12] *Bose Battery Recall*, *supra* note 1.

[13] *Samsung Expands Recall of Galaxy Note7 Smartphones Based on Additional Incidents with Replacement Phones; Serious Fire and Burn Hazards*, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION (Oct. 13, 2016), https://www.cpsc.gov/Recalls/2017/Samsung-Expands-Recall-of-Galaxy-Note7-Smartphones-Based-on-Additional-Incidents-with-Replacement-Phones (recalling about 1.9 million phones, including 1 million recalled on September 15, 2016).

[14] *PackSafe - Portable Electronic Devices Containing Batteries*, FEDERAL AVIATION ADMINISTRATION, https://www.faa.gov/hazmat/packsafe/portable-electronic-devices-with-batteries ("Spare (uninstalled) lithium metal and lithium ion batteries are always prohibited in checked baggage . . . .").

[15] *See* 49 C.F.R. § 173.185 (2025) (governing the packaging and transportation of lithium cells and batteries).

[16] Giulia Heyward, *FDNY Reports 67% Drop in Lithium-ion Battery Deaths in 2024*, GOTHAMIST (Jan. 8, 2025) https://gothamist.com/news/fdny-reports-67-drop-in-lithium-ion-battery-deaths-in-2024 (last visited Nov. 13, 2026).

**C. Defendant's Misleading Marketing of the Affected Products**

30. Defendant's marketing of its S1 Pro and S1 Pro+ systems depends on the lithium-ion battery pack. The speakers work as portable PA systems only because the lithium-ion battery pack allows the Affected Products to operate without AC power. Defendant told S1 Pro+ buyers that, "[w]ith . . . up to 11 hours of play time, the speaker is ready to bring to any larger hang out."[17] Those 11 hours of play time represent the operational runtime of the speakers while being powered by the battery pack. Without it, as the recall now requires, the speaker can be used only while plugged into AC power.

31. As of May 18, 2026, Defendant's product webpage for the S1 Pro+ System Battery Pack stated: "Extend the play time of your Bose S1 Pro+ Wireless System with an extra battery or replace an existing one. This lithium-ion battery provides up to 11 hours per charge and installs easily into the dedicated compartment on your S1 Pro+ for secure and reliable use."[18]

32. Defendant's product representations, reproduced in retailer listings, also told consumers to "[p]ermanently install the battery inside the S1 Pro system for safe and easy charging."[19]

---

[17] *Bose S1 Pro+ Portable Bluetooth Speaker System*, *supra* note 3 ("With a carry handle and up to 11 hours of play time, the speaker is ready to bring to any larger hang out.").

[18] *Bose S1 Pro+ Battery Pack*, *supra* note 2.

[19] *See Bose S1 Pro System Battery Pack*, B&H PHOTO VIDEO, (archived July 30, 2021), https://web.archive.org/web/20210730071505/https://www.bhphotovideo.com/c/product/1383881-REG/bose_789175_0010_s1_battery_pack.html/overview (last visited Nov. 13, 2026); *Bose S1 Pro+ System Battery Pack*, BOSE (U.K.), (archived Feb 17, 2026), https://web.archive.org/web/20260217215606/https://www.bose.co.uk/en_gb/products/speakers/speaker_accessories/s1-pro-plus-battery-pack.html (last visited Nov. 13, 2026) ("Permanently install the battery inside the S1 Pro+ System for safe and easy charging").

33. Defendant also gave a written Limited Warranty, under which "Bose warrants Bose Products, Bose Accessories and Replacement Parts (under the terms set out herein) against defects in materials and workmanship when purchased directly from Bose or a Bose authorized distributor/reseller." For a covered defect, the warranty provides that Defendant will, at its option, repair or replace the product or "provide a partial or full refund of the original purchase price."[20]

34. Upon information and belief, none of Defendant's product pages, packaging, or warranty materials disclosed that the Affected Products could overheat, melt, smoke, or ignite.

35. Defendant sold its S1 Pro and S1 Pro+ systems and their battery packs under the Bose name at premium prices. Independent reviewers have noted that the S1 Pro+ "is not a cheap unit" and that the Bose name carries a higher price than some competitors.[21] Consumers paid that premium for Bose battery packs sold for "secure and reliable use." They received battery packs that Defendant has since recalled because they can overheat and ignite.

36. Defendant's statements and omissions were material. A reasonable consumer buying a battery pack sold for "secure and reliable use" expects that it will not overheat and ignite during ordinary use, and would consider a risk of fire important in deciding whether, and at what price, to buy it. Had Defendant disclosed that risk, consumers, including Plaintiff, would not have bought the Affected Products or would have paid less for them.

---

[20] *Bose Limited Warranty*, BOSE, https://assets.bosecreative.com/m/24173b57dad60c74/original/US_WARRANTY_EN.pdf (last visited Nov. 13, 2026).

[21] *See* Patryk Biernacki, *Bose S1 Pro Plus Review – Superb Wireless Portable PA*, HOME DJ STUDIO (updated May 25, 2026), https://homedjstudio.com/bose-s1-pro-plus-review/ (last visited Nov. 13, 2026).

### D. The Affected Products Are the Subject of a Nationwide Recall

37. Defendant's recall covers about 634,759 battery packs sold in the United States over more than eight years, from December 2017 through July 2026, whether sold with the original S1 Pro, with the later S1 Pro+, or separately as accessories or replacement parts.[22]

38. Defendant continues to market and promote its S1 Pro+ system as portable and battery-powered, stating that it "[p]lays up to 11 hours" and is "ready to bring to any larger hang out," even after the recall of the Affected Products and reports of battery packs melting, producing smoke, and catching fire.[23]

39. Although Defendant announced the recall, the relief offered to consumers does not fully address the economic injury alleged here. Defendant offers only a replacement battery pack. Until a replacement arrives, consumers are left with a purportedly portable, battery-powered speaker system that can be used only while stationary and plugged into AC power. This remedy imposes unnecessary burdens on consumers and fails to adequately compensate them for purchasing a defective product that can overheat and ignite.

---

[22] *Bose Battery Recall*, *supra* note 1.

[23] *See Bose S1 Pro+ Portable Bluetooth Speaker System, supra note 3.* Defendant's active website copy continues to promote the S1 Pro+ as a "battery-powered PA system" that "[p]lays up to 11 hours" and is "ready to bring to any larger hang out."

40. Defendant requires consumers to complete a multi-step process to obtain a remedy for the Affected Products, including removing the bottom plate of the speaker system, removing the battery pack, locating and registering the battery pack's 17-digit serial number, and disposing of the recalled battery pack in accordance with local requirements for recalled lithium-ion batteries.[24] Defendant states that online replacement requests "are not available in all regions."[25] These requirements are cumbersome and create unnecessary barriers for consumers seeking relief for a defective product that poses serious safety risks.

41. Defendant's refusal to provide a refund conflicts with its own Limited Warranty, which lists a "partial or full refund of the original purchase price" among the remedies for a covered defect.[26]

42. The recall provides insufficient reimbursement for the premium prices consumers paid in reliance on Defendant's misrepresentations, as many consumers may have already discarded the Affected Products due to their dangerous nature and may not wish to receive a replacement battery pack from a company they no longer trust. The recall also gives nothing to consumers who never learn of it, and does not compensate anyone for the loss of the speaker's portable use while waiting for a replacement, or for the time spent removing, identifying, registering, and disposing of a hazardous battery. Accordingly, the offered remedy fails to adequately compensate consumers for their economic losses and the serious safety risks posed by the use of the Affected Products. Plaintiff seeks a full cash refund as a remedy.

---

[24] *See Recall of Certain S1 Pro System Battery Packs*, BOSE, https://www.bose.com/support/s1-battery-recall (last visited Nov. 13, 2026).
[25] *Id.*
[26] *Bose Limited Warranty*, *supra* note 20.

**E. Defendant Had Notice of the Defect and of Plaintiff's Claims**

43. Defendant had actual notice of the lithium-ion battery defect, and of the Affected Products' nonconformity with Defendant's representations and warranties, well before this action was filed. Before announcing its recall in November 2026, Defendant received at least seven consumer reports of the Affected Products melting, producing smoke, or catching fire, including six reports of property damage.[27] Upon information and belief, Defendant also received warranty claims from purchasers of the Affected Products, and received some or all of the incident reports while it was still selling the Affected Products, which it sold through July 2026.

44. Defendant also knew that S1 Pro+ battery packs from one supplier had less heat tolerance than packs from another. Defendant's support article for the S1 Pro+, titled "Product turns off in high temperature environments," states that "[t]he battery can shut down if temperatures reach beyond normal operating range," and that "[t]his can happen with still air in direct sunlight with temperatures around 40C or 104F." It instructs agents handling repeat problems: "If the part number on battery is 867095-0140, they are using a battery made by CHAM. Send the customer an [sic] free of charge LG battery which should provide an extra 10C of operating temp."[28] Figure 3 shows that article as it appeared on November 8, 2026.

[27] *Bose Battery Recall*, *supra* note 1.
[28] *Product turns off in high temperature environments | Bose S1 Pro+ Portable Bluetooth Speaker System*, BOSE, https://support.bose.com/article/s1prop-speakerwireless-product-turns-off-in-high-temperature-environments---ka08c000000hgjaaau (last visited Nov. 13, 2026).



⚠ IMPORTANT SAFETY RECALL for S1 Pro and S1 Pro+ batteries. Learn more

HELP CENTER ORDERS PRODUCT SUPPORT BOSE

← VIEW ALL ARTICLES

**Product turns off in high temperature environments | Bose S1 Pro+ Portable Bluetooth Speaker System**

Bose S1 Pro+ Portable Bluetooth Speaker System

Sold from 2023

Not your product?

Enter your product name and issue

Product turns off in high temperature environments | Bose S1 Pro+ Portable Bluetooth Speaker System

**Remove the battery to cool and then try again**

The battery can shut down if temperatures reach beyond normal operating range. This can happen with still air in direct sunlight with temperatures around 40C or 104F.

Disconnect the system from power, then remove the system battery. Once the battery is cool to the touch, replace the battery and try charging again.

**Move the system out of direct sunlight**

If possible, move the system to a shaded, cooler area.

**If this issue happens repeatedly, call Bose customer support**

This issue should not be a reoccurring thing. Call Bose customer support for assistance with your system.

**Escalate and transfer the customer to PCAL**

- ID the battery:
- If the part number on battery is 867095-0140, they are using a battery made by CHAM.
- Send the customer an free of charge LG battery which should provide an extra 10C of operating temp
- ONLY send the customer this part number 867095-0020 FOC

*Figure 3 - Defendant's support article for the S1 Pro+, "Product turns off in high temperature environments," captured November 8, 2026.*

45. Defendant has recalled a speaker product for fire risk before. In June 2023, Defendant recalled about 884,000 Acoustimass, Lifestyle, and Companion bass modules produced before April 2006 because "[t]he speaker's electrical components can fail, posing a fire hazard," after receiving 21 reports worldwide of the modules igniting or melting.[29] Defendant therefore knew how to monitor its speaker products for fire risk and how to act on what it found.

---

[29] *Bose Recalls Acoustimass®, Lifestyle® and Companion™ Bass Modules Due to Fire Hazard*, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION (June 29, 2023), https://www.cpsc.gov/Recalls/2023/Bose-Recalls-Acoustimass-Lifestyle-and-Companion-Bass-Modules-Due-to-Fire-Hazard (last visited Nov. 13, 2026).

**F. The Particulars of Defendant's Misrepresentations and Omissions**

46. Defendant made the statements and omissions alleged here on its bose.com product pages, on the Affected Products' packaging, and in product copy reproduced in retailer listings, including those of Best Buy and zZounds Music, LLC, from December 2017, when the Affected Products went on sale, through July 2026, when sales ended. The central misrepresentation is that the battery packs install "for secure and reliable use."[30] Defendant also told consumers to install the battery pack "for safe and easy charging" and warranted the Affected Products "against defects in materials and workmanship." Each statement was misleading because the battery packs contain a defect that, as Defendant now admits, can cause them to "overheat and ignite, posing a risk of injury from fire and overheating hazards."[31] Defendant omitted that risk from its product pages, packaging, and warranty materials. As alleged above, the materials Plaintiff reviewed before buying did not disclose it, and Plaintiff paid the purchase price without knowing of it.

47. Defendant omitted that risk from its product pages, packaging, and warranty materials. As alleged above, the materials Plaintiff reviewed before buying did not disclose it, and Plaintiff paid the purchase price without knowing of it.

## TOLLING

48. Defendant's conduct delayed consumers' discovery of their claims. The statutes of limitations applicable to Plaintiff's and the Classes' claims were tolled by Defendant's conduct, including its failure to disclose the defect, and Plaintiff's and the Classes' delayed discovery of their claims.

[30] *Bose S1 Pro+ Battery Pack*, *supra* note 2.
[31] *Bose Battery Recall*, *supra* note 1.

49. As alleged herein, Plaintiff and members of the Classes did not know, and could not have known, that the Affected Products were dangerous due to the undisclosed defect in their lithium-ion batteries. Plaintiff and members of the Classes could not have discovered Defendant's unlawful conduct with reasonable diligence.

## CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action pursuant to Rule 23(a), (b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of the following classes:

> **Nationwide Class:** All persons who purchased one or more Affected Products in the United States, whether separately or as part of a Bose S1 Pro or S1 Pro+ Portable Bluetooth Speaker System, for personal, family, or household use, within any applicable limitations period (the "Nationwide Class").
>
> **New York Subclass:** All persons who purchased one or more Affected Products in New York, whether separately or as part of a Bose S1 Pro or S1 Pro+ Portable Bluetooth Speaker System, for personal, family, or household use, within any applicable limitations period (the "New York Subclass"). The Nationwide Class and the New York Subclass are together the "Classes," and their members are "Class Members."

51. Excluded from the Classes are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents has a controlling interest, and Defendant's current or former employees, officers, and directors; (3) persons who purchased Affected Products for resale; and (4) any person asserting a claim for personal injury, wrongful death, or damage to property other than the Affected Products themselves.

52. Numerosity (Rule 23(a)(1)): The members of the Classes are so numerous that joinder is impracticable. Defendant sold approximately 634,759 Affected Products in the United States through bose.com and national retailers, and, upon information and belief, the New York Subclass includes thousands of New York purchasers. The precise number of Class Members, and their addresses, is unknown to Plaintiff at this time, but can be ascertained from Defendant's sales

and recall-registration records and/or retailer records. The members of the Classes may be notified of the pendency of this action by mail or email, Internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

53. Predominant Common Questions (Rule 23(a)(2) and (b)(3)): The Classes' claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class Members. The common questions of law and fact include, but are not limited to, the following:

a. Whether the marketing, advertising, packaging, and labeling for the Affected Products were false, misleading, and/or deceptive;

b. Whether the Affected Products can overheat and ignite;

c. Whether Defendant knew or should have known of that risk before the recall;

d. Whether Defendant breached its express warranties;

e. Whether Defendant breached its implied warranties of merchantability;

f. Whether Defendant's disclaimer of implied warranties is ineffective under 15 U.S.C. § 2308;

g. Whether Defendant violated GBL §§ 349 and 350 as to the New York Subclass;

h. Whether the Affected Products were defectively designed;

i. Whether Defendant failed to provide adequate warnings concerning the risk that the Affected Products' lithium-ion batteries could overheat and ignite during ordinary use;

j. Whether Defendant was unjustly enriched;

k. Whether the recall remedy makes Class Members whole; and

l. The nature of relief, including damages and equitable relief, to which Plaintiff and members of the Classes are entitled.

54. Typicality of Claims (Rule 23(a)(3)): Plaintiff's claims are typical of the claims of the Classes because Plaintiff, like all other Class Members, purchased an Affected Product, suffered damages as a result of that purchase, and seeks the same relief as the proposed Class Members.

55. Adequacy of Representation (Rule 23(a)(4)): Plaintiff adequately represents the Classes because his interests do not conflict with the interests of the members of the Classes, and he has retained counsel competent and experienced in complex class action and consumer litigation. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Classes.

56. Superiority (Rule 23(b)(3)): A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Classes to individually litigate their own claims against Defendant because the damages suffered by Plaintiff and the members of the Classes are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments, delay, and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

57. Injunctive or Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)): In the alternative, this action may properly be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for the Defendant; or the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to individual members

of the Classes which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY
### (On behalf of Plaintiff and the Nationwide Class or, in the Alternative, the New York Subclass)

58. Plaintiff and the Nationwide Class incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

59. Massachusetts law governs this Count. Defendant is headquartered in Framingham, Massachusetts, where, upon information and belief, it designed the Affected Products, prepared the marketing and Limited Warranty at issue, and made its recall decisions. In the alternative, Plaintiff asserts this Count under New York law on behalf of the New York Subclass.

60. Defendant is and was at all relevant times a merchant engaged in the business of designing, manufacturing, marketing, and selling the Affected Products.

61. Defendant marketed and sold the Affected Products in the stream of commerce with the intent that the Affected Products would be purchased by Plaintiff and the Nationwide Class.

62. In connection with the sale of the Affected Products, Defendant made written affirmations of fact and promises relating to the goods on its bose.com product pages and in product copy reproduced in retailer listings.

63. Specifically, Defendant affirmed that the S1 Pro+ System Battery Pack installs "for secure and reliable use."[32] Defendant also told consumers to install the battery packs "for safe and easy charging," and its Limited Warranty covers its products, accessories, and replacement parts "against defects in materials and workmanship."

64. These affirmations became part of the basis of the bargain between Plaintiff, Class Members, and Defendant.

65. The Affected Products do not conform to those affirmations. As alleged above, their lithium-ion batteries can overheat, melt, or ignite during ordinary use, so they are not fit for secure and reliable use. The defect existed when the Affected Products were sold and is a defect in materials or workmanship. Defendant therefore breached its express warranties.

66. Defendant has not cured the breach. Its recall offers only a replacement, not the refund its own warranty contemplates, and leaves Class Members without the benefit of their bargain.

67. As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and the Class Members have been injured and harmed because (a) they would not have purchased the Affected Products on the same terms, if at all, if they had known that the product was not safe; and (b) the Affected Products do not have the characteristics, uses, benefits, or qualities as promised.

## COUNT II
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
**(On behalf of Plaintiff and the Nationwide Class or, in the Alternative, the New York Subclass)**

68. Plaintiff and the Nationwide Class incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

---

[32] *Bose S1 Pro+ Battery Pack*, *supra* note 2.

69. Massachusetts law governs this Count for the reasons alleged in Count I. Under Mass. Gen. Laws ch. 106, § 2-318, lack of privity is no defense to a warranty claim against a manufacturer brought by a person whom the manufacturer might reasonably have expected to use the goods, and the manufacturer may not exclude or limit that rule. Plaintiff and Class Members are such persons. In the alternative, Plaintiff asserts this Count under New York law on behalf of the New York Subclass.

70. By operation of law, a warranty that the goods shall be merchantable is implied in a contract for their sale when the seller is a merchant with respect to goods of that kind.

71. To be merchantable, goods must be, at a minimum, fit for the ordinary purposes for which such goods are used.

72. Defendant is a merchant with respect to the Affected Products, and an implied warranty of merchantability arose as part of the sale of these goods to Plaintiff and Class Members.

73. Defendant's Limited Warranty states that "BOSE DISCLAIMS ALL OTHER WARRANTIES WHETHER EXPRESS OR IMPLIED (INCLUDING BUT NOT LIMITED TO ANY WARRANTY OF MERCHANTABILITY . . . )." That disclaimer is ineffective. A supplier that makes a written warranty may not "disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product," 15 U.S.C. § 2308(a), and a disclaimer made in violation of that section "shall be ineffective for purposes of this chapter and State law," id. § 2308(c).

74. Defendant impliedly warranted that the Affected Products were of merchantable quality and safe for use as rechargeable batteries for portable speaker systems.

75. Safety is an inherent requirement of merchantability; a product that is unreasonably dangerous for its ordinary use is not merchantable.

76. Defendant breached the implied warranty of merchantability because the Affected Products are not fit for their ordinary purpose; the latent battery defect means the battery packs can overheat and ignite during ordinary use.

77. The Affected Products' propensity to overheat during ordinary use renders them unsuitable for the everyday use for which they were marketed and, in the alternative, worthless.

78. To the extent New York law applies and any Class Member purchased an Affected Product from a third-party retailer rather than from Defendant directly, that Class Member is an intended third-party beneficiary of Defendant's implied warranties. Defendant manufactured and marketed the Affected Products for sale to ultimate consumers through authorized retailers. Defendant's own Limited Warranty is extended to the original end-use purchaser.

79. Plaintiff gave Defendant notice of the breach as alleged in Count I, and Defendant had actual knowledge of the defect, as its recall shows.

80. As a direct and proximate result of Defendant's breach, Plaintiff and Class Members have suffered economic injury and are entitled to damages, including a full cash refund and restitution.

## COUNT III
## DECEPTIVE ACTS AND PRACTICES
## NEW YORK GENERAL BUSINESS LAW § 349
## (On behalf of Plaintiff and the New York Subclass)

81. Plaintiff and the New York Subclass incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

82. By the acts and conduct alleged herein, Defendant committed deceptive acts and practices in the State of New York by making the above-alleged misrepresentations and omissions directed to consumers in New York.

83. Plaintiff and other members of the New York Subclass are "consumers" in accordance with New York General Business Law ("GBL") § 349.

84. GBL § 349 prohibits deceptive acts and practices in the conduct of any business, trade, or commerce in New York. Section 349(h) gives any person injured by "any deceptive act or deceptive practice" a private right of action.

85. Defendant's conduct was consumer-oriented. Defendant directed the same marketing, product pages, and warranty materials to the consuming public at large, and sold the Affected Products to New York consumers through bose.com and retailers in New York.

86. Defendant's advertisements and point-of-sale materials represented that the battery packs install "for secure and reliable use" and "for safe and easy charging." Those representations were misleading because Defendant omitted the material fact that the Affected Products' lithium-ion batteries could overheat and ignite during ordinary use, a fact within Defendant's knowledge that consumers could not reasonably discover before purchase. A reasonable consumer would have considered that information important in deciding whether to purchase the Affected Products.

87. Defendant's misrepresentations and omissions were likely to mislead a reasonable consumer acting reasonably under the circumstances, and were material. At all relevant times, Defendant conducted trade and commerce in New York within the meaning of GBL § 349, and profited from the sale of the Affected Products within New York.

88. Section 349 allows a plaintiff to recover "actual damages or fifty dollars, whichever is greater," and the Court may increase the award to three times actual damages, up to one thousand dollars, if Defendant willfully or knowingly violated the statute. N.Y. Gen. Bus. L. § 349(h).

89. As a direct and proximate result of Defendant's conduct, Plaintiff and other members of the New York Subclass have suffered damages: they paid for Affected Products that were worth less than represented, and that they would not have bought, or would have paid less for, had Defendant told the truth.

90. Accordingly, Plaintiff and the New York Subclass seek to enjoin the unlawful acts and practices described herein and to recover their actual damages or fifty dollars, whichever is greater; treble damages up to one thousand dollars because Defendant's violation was willful and knowing; and reasonable attorneys' fees and costs, under GBL § 349(h).

**COUNT IV**
**FALSE ADVERTISING**
**NEW YORK GENERAL BUSINESS LAW §§ 350 AND 350-a**
**(On behalf of Plaintiff and the New York Subclass)**

91. Plaintiff and the New York Subclass incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

92. GBL § 350 prohibits false advertising in the conduct of any business, trade, or commerce in New York. Under GBL § 350-a, whether advertising is misleading turns on its representations and on the extent to which it fails to reveal facts material in light of those representations.

93. Defendant's advertising of the Affected Products, including its bose.com product page describing the S1 Pro+ System Battery Pack as installing "for secure and reliable use," was misleading because it did not reveal that the battery packs could overheat and ignite.

94. Defendant's advertising was consumer-oriented and was directed to, and reached, New York consumers.

95. Before opening the product, Plaintiff reviewed Defendant's packaging as alleged above, which did not disclose that the battery packs could overheat and ignite. Plaintiff and the New York Subclass were injured because they paid for Affected Products worth less than represented.

96. Plaintiff and the New York Subclass seek their actual damages or five hundred dollars, whichever is greater; treble damages up to ten thousand dollars because Defendant's violation was willful and knowing; injunctive relief; and reasonable attorneys' fees, under GBL § 350-e(3).

**<u>COUNT V</u>**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the New York Subclass, in the Alternative)**

97. Plaintiff and the New York Subclass incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

98. Plaintiff pleads this Count in the alternative to his claims for breach of express and implied warranty. To the extent Defendant contends that a written warranty or other contract governs the parties' dispute but does not afford Plaintiff and the New York Subclass a remedy, Plaintiff and the New York Subclass are entitled to recover in quasi-contract.

99. Plaintiff and the New York Subclass Members conferred benefits upon Defendant. Plaintiff and New York Subclass Members paid money for Defendant's Affected Products that they would not have purchased or would not have purchased on the same terms, had they known that the Affected Products were unsafe or could overheat.

100. Defendant unjustly retained the benefits conferred upon Defendant by Plaintiff and the New York Subclass Members.

101. Defendant retained those benefits under circumstances that make it inequitable for Defendant to retain such benefits. Specifically, Defendant retained those benefits even though Defendant's Affected Products were unsafe and could not perform as advertised. If Plaintiff and New York Subclass Members had known the true nature of Defendant's Affected Products, they would not have purchased them. Plaintiff and the New York Subclass Members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

102. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the New York Subclass is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the New York Subclass for its unjust enrichment, as ordered by the Court.

**COUNT VI**
**NEGLIGENT DESIGN**
**(On behalf of Plaintiff and the New York Subclass)**

103. Plaintiff and the New York Subclass incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

104. Defendant had a duty to exercise reasonable care in the design of the Affected Products to avoid unreasonable, foreseeable risks of harm where safer, feasible alternatives existed.

105. Each Affected Product is a lithium-ion battery pack enclosed in a speaker system that consumers charge at home and carry to parties, outdoor gatherings, and performances, where it is used among people and their belongings. During charging or discharging, the battery pack generates heat, and, due to defects in its battery cells or internal safeguards, it is prone to overheating and thermal runaway. As a result, an Affected Product can melt, produce smoke, or catch fire during ordinary use, without adequate warning.

106. Feasible, safer alternative designs were available at reasonable cost, including, but not limited to: (a) higher-quality or more stable lithium-ion battery cells with reduced risk of thermal runaway; (b) integrated thermal management systems, including temperature sensors and automatic shutoff mechanisms to prevent overheating; (c) improved internal separation and insulation to prevent short-circuiting; (d) enhanced manufacturing controls, supplier qualification, and battery testing protocols to detect defects prior to distribution; and (e) as Defendant's own support article reflects, sourcing a battery "which should provide an extra 10C of operating temp."

107. Defendant breached its duty by adopting, manufacturing, and selling the Affected Products with the defective design described herein without proper safeguards.

108. This defective design was a substantial factor in causing the overheating and thermal runaway incidents reported to Defendant and to CPSC, resulting in the lithium-ion batteries within the Affected Products melting, producing smoke, or catching fire during ordinary use, and creating a risk of fire and property damage.

109. Defendant had actual and/or constructive knowledge of the defect prior to the recall announcement, including through consumer complaints, incident reports, warranty claims, and internal or third-party testing. Despite this knowledge, Defendant continued to market and sell the Affected Products without adequate warnings or design modifications.

110. Plaintiff and the New York Subclass suffered economic injury, proximately caused by Defendant's negligent design.

**COUNT VII**
**NEGLIGENT FAILURE TO WARN**
**(On behalf of Plaintiff and the New York Subclass)**

111. Plaintiff and the New York Subclass incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

112. Defendant owed a duty to provide adequate warnings and instructions regarding non-obvious risks known or reasonably knowable at the time of sale, and, when appropriate, to provide post-sale warnings as knowledge of hazards emerged.

113. The risk that the lithium-ion batteries within the Affected Products could overheat and enter thermal runaway during ordinary charging, storage, or use, resulting in ignition or fire, was not open and obvious to ordinary consumers at the time of purchase, particularly where the product was marketed for “secure and reliable use.”

114. Defendant knew or, in the exercise of reasonable care, should have known of the hazard through pre-market testing, consumer complaints, warranty claims, incident reports, product-use data, and its own guidance on battery heat tolerance. Post-sale, Defendant received additional reports and complaints concerning overheating and fire risks, yet failed to timely issue adequate warnings, instructions, or interim safety guidance.

115. Defendant breached its duties by omitting clear pre-sale warnings about the risk that the lithium-ion batteries in the Affected Products could overheat, ignite, or enter thermal runaway, and by failing to timely provide adequate warnings, instructions, or a full and effective remedy sufficient to address the hazard posed by the Affected Products. Adequate warnings were available at nominal cost, including clear, prominent labels and instructions addressing overheating risks, safe charging practices, and the proper storage and handling of the device.

116. As a direct and proximate result of Defendant’s failure to warn, Plaintiff and the New York Subclass purchased the Affected Products without knowledge of the risk that their lithium-ion batteries could overheat or ignite, paid more for the Affected Products than they would have paid had that risk been disclosed, and suffered economic loss.

**COUNT VIII**
**NEGLIGENCE**
**(On behalf of Plaintiff and the New York Subclass)**

117. Plaintiff and the New York Subclass incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

118. Defendant owed Plaintiff and the New York Subclass a duty to exercise reasonable care in the design, testing, manufacture, marketing, instructions, and warnings for its lithium-ion battery packs, including a continuing post-sale duty to take reasonable steps to warn consumers and mitigate the hazard once it knew or should have known that the lithium-ion batteries could overheat, ignite, or enter thermal runaway during ordinary use.

119. Defendant breached these duties by, among other things: (a) designing and manufacturing the Affected Products with lithium-ion batteries and internal components prone to overheating and thermal runaway during ordinary use; (b) failing to conduct adequate pre-market safety and reliability testing, or failing to act on such testing; (c) failing to provide adequate pre-sale warnings and instructions regarding the risk of overheating or fire during charging, storage, or use; and (d) failing, post-sale, to timely warn prior purchasers, issue adequate safety guidance, or implement prompt remedial measures after receiving consumer complaints, incident reports, and evidence of overheating and fire-related events.

120. The risk that the Affected Products could overheat, ignite, or enter thermal runaway during ordinary charging, storage, or use resulting in fire or property damage was foreseeable to Defendant, and safer, feasible alternative designs and precautions were available at reasonable cost, including the use of higher-quality or more stable battery cells, integrated thermal management systems, improved internal insulation and separation to prevent short-circuiting, enhanced safety testing protocols, and clear, prominent warnings and instructions regarding safe use and handling.

121. Defendant's negligence was a substantial factor in causing the overheating and thermal runaway incidents reported to Defendant and to CPSC, and the resulting economic loss suffered by Plaintiff and the New York Subclass. Such harm was a reasonably foreseeable consequence of the breaches alleged herein.

122. As a direct and proximate result, Plaintiff and the New York Subclass suffered economic loss, including out-of-pocket losses and a diminution in value of the Affected Products.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the proposed Classes, prays for relief and judgment against Defendant as follows:

a. Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as the representative of the Classes, and designating Plaintiff's counsel as Class Counsel;

b. Awarding Plaintiff and the Classes compensatory, statutory, and treble damages as permitted by law;

c. For declaratory and equitable relief, including restitution and disgorgement;

d. Awarding Plaintiff and the Classes the costs of prosecuting this action, including expert witness fees;

e. Awarding Plaintiff and the Classes reasonable attorneys' fees and costs as allowable by law;

f. Directing Defendant to provide a full cash refund option, to cure its inadequate recall and notification processes, correct its manufacturing and marketing practices, and to comply with the relevant consumer protection statutes;

g. Awarding pre-judgment and post-judgment interest; and

h. Granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: November 17, 2026

Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By: /s/ *Gary Ishimoto*
Gary Ishimoto (BBO# 707319)
Mark S. Reich*
Michael N. Pollack*
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: 212-363-7500
Facsimile: 212-363-7171
Email: gishimoto@zlk.com
Email: mreich@zlk.com
Email: mpollack@zlk.com

*Counsel for Plaintiff*

* *pro hac vice* forthcoming)